IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| **ERIN CLARK** and )<br>**TERRILL WAKEFIELD,** )<br> )<br>  Plaintiffs, )<br> )<br>v. )<br> )<br>**TENNESSEE STATE UNIVERSITY,** )<br> )<br>  Defendant. ) | Case No. _____ |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Come now the Plaintiffs, Erin Clark and Terrill Wakefield, and bring this cause of action against Tennessee State University for pregnancy and parental status discrimination in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 (hereinafter "Title IX").

## PARTIES

1. Erin Clark (hereinafter "Plaintiff Clark"), is a resident of Memphis, Tennessee.

2. Terrill Wakefield (hereinafter "Plaintiff Wakefield"), is a resident of Memphis, Tennessee.

3. Tennessee State University (hereinafter "Defendant TSU" or "TSU"), is a public school located at 3500 John A. Merritt Boulevard, Nashville, TN 37209.

4. The agent for service of process is the General Counsel, Laurence Pendleton, 3500 John A. Merritt Boulevard, Nashville, Tennessee 37209.

5. Defendant TSU is a statutory "educational institution" as defined by Title IX.

1

6. Plaintiffs were graduate students within TSU's Department of Biological Sciences at all times relevant to this Complaint.

## JURISDICTION AND VENUE

7. This court has jurisdiction of this matter pursuant to 20 U.S.C. §1331 because the civil action involves a federal question arising from Title IX.

8. This court has jurisdiction of this matter pursuant to 28 U.S.C. §1332 because the amount in controversy exceeds $75,000.

9. Venue is proper in this matter because the TSU campus where the pregnancy and parenting status discrimination occurred is located in Nashville, Tennessee.

10. At all times relevant to this litigation, Plaintiffs were graduate students at TSU on the campus located in Nashville, Tennessee.

11. This lawsuit is being filed within one year of the complained of conduct.

## FACTS

12. Plaintiffs were accepted into and began the Master's program in biological science at TSU in the Fall 2019 semester.

13. Plaintiffs were also accepted into the "Bridge to Doctorate" program at TSU, which provided funding and support to pursue a science, technology, engineering, and mathematics ("STEM") Master's degree and matriculate into the Doctor of Philosophy ("Ph.D.") program that followed.

14. Plaintiff Clark completed the Master of Science ("M.S.") degree in Summer 2021 with a 3.824 grade point average ("GPA").

15. Plaintiff Wakefield completed the M.S. degree in Summer 2021 with a 3.735 GPA.

16. Plaintiffs were supposed to receive continued funding as part of the Bridge to Doctorate program when they proceeded to their Ph.D. program, as long as they met the established requirements.

17. Up to and through July 2021, both Plaintiffs met the requirements of the Bridge to Doctorate program.

18. The requirements to receive Bridge to Doctorate Ph.D. funding at TSU changed, and Plaintiffs applied for the continued Bridge to Doctorate funding through the Preparing Our Tomorrow Uniquely in STEM ("POTUS") Fellowship program, a federally funded program under Title III.

19. In June 2021, Plaintiffs applied to POTUS for funding.

20. POTUS was and continues to be headed by Dr. Andrea Tyler, the director of Graduate Student Services at TSU.

21. In July 2021, while Plaintiff Clark was eight months pregnant with her and Plaintiff Wakefield's child, she participated in a Zoom interview as part of the POTUS application process.

22. Only Plaintiff Clark's head and upper chest were visible on camera.

23. At the time of the Zoom interview, Dr. Tyler did not have knowledge Plaintiff Clark was pregnant.

24. On or about August 5, 2021, Plaintiff Wakefield was notified via a telephone call from TSU Professor and Interim Chair of the Department of Biological Sciences Dr. Xiaofei Wang that he was unofficially approved for Title III funding for a Graduate Assistantship for Biology.

25. Dr. Wang then asked to speak with Plaintiff Clark, and he informed her that she had not received Title III funding for either a graduate assistantship or a POTUS Fellowship due to her pregnancy.

26. On or about August 9, 2021, Dr. Tyler called Plaintiff Clark via telephone and asked Plaintiff Clark if she was pregnant.

27. Plaintiff Clark had never previously spoken to Dr. Tyler about Plaintiff Clark's pregnancy.

28. During the August 9th call, Dr. Tyler asked if Plaintiff Clark was with child and about to deliver, or words to that effect.

29. Plaintiff Clark replied that she was pregnant and was due to be induced on August 21, 2021.

30. Dr. Tyler stated she (Dr. Tyler) was "being too invasive" but was "trying to understand this whole thing" because she was "getting a lot of emails" about Plaintiff Clark, or words to that effect.

31. Dr. Tyler confirmed during the telephone call with Plaintiff Clark that Dr. Wang and other people told her that Plaintiff Clark was pregnant.

32. Dr. Tyler asked how Plaintiff Clark was going to start school on Monday, as "those first few weeks are critical for [Plaintiff Clark's] health and the baby," or words to that effect.

33. Dr. Tyler then said, "I run a tight ship" and that she has "very little tolerance on [her] fellows not doing what they're supposed to do," or words to that effect. Dr. Tyler explained that she is trying to prepare future leaders.

4

34. Dr. Tyler stated, "I was really concerned with you having a newborn baby . . . and trying to come in as one of my fellows, quite frankly," or words to that effect.

35. Plaintiff Clark explained that she had childcare lined up and was planning to take minimal time off.

36. Ultimately, Dr. Tyler decided to "take a chance" on Plaintiff Clark and offered her a Fellowship, or words to that effect.

37. However, Dr. Tyler also made it clear to Plaintiff Clark that she would be "carefully watching" Plaintiff Clark's performance, and that no exceptions of any kind would be made for Plaintiff Clark.

38. Dr. Tyler said that she was "sympathetic" to Plaintiff Clark because she has children herself, but that it was "bad timing" for the program.

39. Dr. Tyler told Plaintiff Clark that at the doctoral level, "in a STEM degree, that's where your focus needs to be" and that it would have been "better if you would have waited" to apply, or words to that effect.

40. Plaintiff Clark assured Dr. Tyler she would do everything possible to meet the expectations of the program and that she intended to start the Ph.D. program in the Fall 2021 semester, rather than the Spring 2022 semester.

41. Plaintiff Clark also confided in Dr. Tyler that if she did not have funding for school, she would need to move back home to Memphis — three hours away from TSU — and would no longer be able to pursue her Ph.D.

42. Plaintiff Clark and her partner, Plaintiff Wakefield, were relying entirely on the program funding to continue their studies and pay rent on their apartment near campus.

43. As a two-student household in programs that prohibited them from pursuing other work outside of the programs, they had no other source of income to remain at TSU without the program funding.

44. In the following two weeks after Plaintiff Clark was accepted as a POTUS Fellow, she started in the program and began teaching her required class.

45. On or about August 13, 2021, Plaintiffs attended a mandatory graduate student meeting.

46. On or about August 14, 2021, Plaintiff Wakefield sent an email to Dr. Elaine Martin, a professor and coordinator in the Department of Biological Sciences at TSU, requesting to teach his September 1, 2021, and September 8, 2021, classes online for two weeks or, alternatively, requesting a substitute so that he could be in Memphis to attend the birth, assist Plaintiff Clark while she was healing, and bond with his newborn baby.

47. Dr. Martin responded to the email, stating, "I will need to discuss your situation with the other project administrators."

48. On or about August 15, 2021, Plaintiff Clark notified Dr. Tyler via email that her induction date was pushed back from August 21, 2021, to the following week and that Plaintiff Clark expected to return to campus on or about September 13, 2021, following the birth.

49. On or about August 15, 2021, Plaintiff Clark was given her graduate teaching assignment to begin on or about August 16, 2021: two classes that required her to transport and carry lab equipment, and travel between campuses.

50. Plaintiff Clark was not informed of her teaching assignment until the day before the first class, even though, upon information and belief, other students were informed earlier about their teaching schedules.

51. Upon information and belief, the class assignment Plaintiff Clark was given was perceived by some students as the most demanding of the program because of the lack of assistance and resources from the professor of the class compared with support reportedly provided by other professors to their teaching assistants, as well as the necessary travel between two campuses that would require Plaintiff Clark to pack up and physically transport lab equipment, which was not a requirement for other classes that were taught at TSU's main campus.

52. On or about August 16, 2021, Plaintiff Clark began teaching her courses, as required for her stipend.

53. On or about August 16, 2021, Plaintiff Clark's and Plaintiff Wakefield's ability to have any employment and income outside of their graduate program-provided stipend was constrained by the program requirements, which provided: "Graduate Assistants must be full-time students and half-time employees, working 20 hours a week. This includes not working any additional jobs outside the university."

54. On or about August 16, 2021, Plaintiff Clark's program start date was moved against her wishes. Dr. Tyler's email to Plaintiff Clark on August 16, 2021, stated: "To ensure you have a successful experience, I think we will change your start date to October 21, 2021. The change in the start date will allow you time to have the baby without any stress. I do believe that this is the best course of action for you and your family."

55. On or about August 17, 2021, Dr. Martin, responded to Plaintiff Wakefield's request for two weeks of accommodations by stating, "After discussion of your 'personal situation,' the decision was made to move your contract date to October 1, 2021."

56. On or about August 28, 2021, Plaintiff Clark and Plaintiff Wakefield's child was born.

57. Neither Plaintiff Clark nor Plaintiff Wakefield received any stipend, prorated or otherwise, as part of the TSU Ph.D. program.

58. Due to financial hardship caused by TSU's pushback of their program start date, Plaintiffs Clark and Wakefield were unable to remain in the program or await the new October start dates.

59. Plaintiffs Clark and Wakefield moved all of their belongings out of their apartment in Nashville and lived temporarily in a Memphis motel until a family member had room to take them in.

60. After the upheaval and expense of moving, they were unable to turn around and resume the program on October 1, 2021.

61. Plaintiffs, during their time at TSU, were made aware of another Ph.D. student in the Department of Biological Sciences who, upon information and belief, had long-term COVID and was provided reasonable accommodations without a pushback of any start date or an obligatory period of absence from the program.

62. The current Title IX coordinator and director of the Office of Equity and Inclusion at TSU, Cornelius Brownlee, is the only employee for the department listed in TSU's directory.

63. Cornelius Brownlee has been employed with TSU since on or about January 1, 2022.

64. Prior to Cornelius Brownlee, Razel Jones served as the Title IX coordinator from July 22, 2019 to May 5, 2021.

65. Upon information and belief, no other Title IX coordinator served TSU between May 5, 2021, and January 1, 2022, which spans the entirety of the involved conduct for this cause of action.

## CAUSE OF ACTION
## TITLE IX, 20 U.S.C. §1681
## Discrimination Due to Pregnancy and Parental Status

66. The above paragraphs are incorporated by reference into this count.

67. As a public institution, Defendant TSU is a Title IX funding recipient.

68. Defendant TSU failed to provide reasonable accommodations with regards to a leave policy to Plaintiffs that was similar to what it provided to other students with temporary medical conditions within the same program.

69. Defendant TSU denied Plaintiff Clark Ph.D. funding, despite being well-qualified and accepted into the Ph.D. program, solely because she was pregnant.

70. Even after approving funding, Defendant TSU placed additional, unrealistic expectations on Plaintiff Clark because of her parenting status and would not accommodate her needs as a pregnant student.

71. Defendant TSU failed to provide reasonable accommodations and set Plaintiff Clark up for failure in the program when it assigned her to teach classes with physical, in-person requirements she could not reasonably carry out.

72. Defendant TSU penalized Plaintiffs because of their parenting status when it unilaterally pushed back their program start dates and stopped their funding and sole source of income, as required by the program, for requesting temporary accommodations at the time of and shortly following the birth of their child.

73. Plaintiffs did not know they could file a complaint with the university because Defendant TSU did not publish and widely distribute policy information about pregnancy and parental status discrimination, or how to file a complaint for such an issue.

74. Even if Plaintiffs had wanted to file a complaint, Defendant TSU did not employ a Title IX coordinator during the period of time the discriminatory conduct occurred.

75. Defendant TSU violated Title IX when it discriminated against Plaintiffs based on their pregnancy and parenting statuses, excluded them from participation in an educational program, and denied them the benefits of an education program receiving federal financial assistance.

## DAMAGES

76. As a result of the deliberate discrimination of Defendant TSU, as described herein, Plaintiffs have suffered the loss of equal educational opportunities, both in the past and in the future. Plaintiffs are entitled to all damages available under Title IX.

**WHEREFORE** Plaintiffs pray that:

a. Plaintiffs be allowed to file this Complaint and Defendant TSU be required to answer the Complaint in the time provided by the law.
b. After the discovery process, this case be heard on its merits before a jury.
c. Plaintiffs be awarded judgment against Defendant TSU for violation of Title IX for damages in the amount of TWO MILLION ($2,000,000) DOLLARS.
d. Plaintiffs be awarded reasonable attorney's fees, court costs, discretionary costs, and all further relief to which they are entitled from each Defendant.

e. Plaintiffs be awarded all further and general relief that the Court deems appropriate in this case.

Respectfully submitted,

/s/Mary A. Parker
Mary A. Parker, TN Bar #6016
**PARKER AND CROFFORD**
5115 Maryland Way
Brentwood, TN 37027
Phone: 615-244-2445
Fax:    615-255-6037
mparker@parker-crofford.com

Tessa Muir, MI.Bar #P79845
**SBBL Law, PLLC**
60 Monroe Center Street NW
Suite 500
Grand Rapids, MI 49503
Phone: 616-458-5500
Fax:    616-458-6007
tessa@sbbllaw.com

*Attorneys for Plaintiff*